### In the Matter of CLUBMAN, INC. and Francisco Colon.

### Misc. No. 80–0024.

United States District Court, D. Puerto Rico.

Feb. 11, 1982.

Raymond L. Acosta, U. S. Atty. by Vivian Reyes-López, Asst. U. S. Atty., Hato Rey, P. R., for Government.

Francisco Castro-Amy, John M. Garcia, Elisa Bobonis Lang, Hato Rey, P. R., for respondents.

## OPINION AND ORDER

CEREZO, District Judge.

This is an enforcement action brought by petitioners United States of America and the U. S. Customs Service requesting an order requiring compliance with administrative summonses issued to Clubman, Inc. to produce the records specified therein as:

1. all purchase orders related to all transactions involving guayabera shirts imported at San Juan, Puerto Rico

2. all letters of credit, bank checks, check registers and accounting ledgers related to (1) above

3. all invoices, pro-forma invoices, agreements, contracts, telexes and any other written communication related to (1) above

and a separate summons issued to one Francisco Colón to appear before Special Agent Benjamín García de Villalobos on January 13, 1979. The summonses were served on José G. Ramírez, President of Clubman, Inc. on November 6, 1979 and on Francisco Colón on that same date. The petition for enforcement was accompanied by a sworn statement of García de Villalobos, special agent in charge of the investigation, where he stated that the summonses covered eighty-three consumption entries between January 1974 and December 1978 and that Clubman, Inc. had not complied with all the information requested and that Francisco Colón had failed to appear after being summoned to testify. Both Clubman, Inc. and Colón opposed enforcement and moved for dismissal urging as grounds that the records sought date back to periods prior to the enactment of the Customs Procedural Reform and Simplification Act of 1978 in which there were no record-keeping requirements; that the summons requiring production of records is overly broad and that, after discovery and an evidentiary hearing, they would show that its sole purpose is to obtain evidence for a criminal prosecution. Respondents categorically asserted that the summons had been issued after prosecution had been requested from the United States Attorney, a statement which has been proven to be incorrect. These matters were set for oral argument on March 4, 1981 at which time the Court expressed that it needed specific information concerning which documents requested from Clubman, Inc. had not been obtained and ordered the government to supply this information the following day in a supplementary affidavit of agent Benjamín García de Villalobos. Said affidavit was timely filed and in it affiant indicated the documents that were presented to him by Clubman, Inc. on November 20, 1975 in relation with the administrative summons. These include a number of checks issued during the period of 1974 through 1978,

copies of accounting ledgers for imported merchandise from Mexico for the years 1977–1978 and the check register for those two years. The agent stated in the affidavit that Clubman, Inc. failed to produce purchase orders for merchandise under investigation for the years 1974 through 1978, accounting ledgers for such merchandise for the years 1974 through 1976, check number 5158 dated February 4, 1976 and checks made in name of the bearer or First National City Bank to cover for payments of imported guayaberas. He again declared that Francisco Colón had failed to appear before him for an interview related to the importation of men's ornamented shirts from Mexico by his employer Clubman, Inc.

On March 20, 1981 we rejected respondents' contention that since section 1508 of the Tariff Act of 1930, 19 U.S.C. Sec. 1306–1677g, was amended on October 3, 1978, Pub.L. 95–410, to establish a record-keeping requirement which did not exist before they could not be compelled to produce records which they were not under a statutory duty to keep before the addition of that requirement. We ruled that since the motive for adding the record-keeping requirement to the Act was to enhance Customs' ability to ensure compliance with Customs law and, furthermore, since respondents did not contest petitioners' allegation that the records sought under the summons existed and were in their possession and custody, adopting the restrictive interpretation proposed by respondents is contrary to the purpose of the amendment. We stated then that the fact that the record-keeping requirement did not exist prior to October 1978 did not mean that the importer was free to keep to itself records in its custody which have been kept in the ordinary course of business even though they are relevant and needed in the investigation being conducted. We also addressed in the March 20, 1981 Order respondents' request for discovery and the need of a hearing at which they would have the opportunity to challenge the summonses by presenting evidence of impropriety of purpose or of lack of good faith in the inquiry. It was ordered that the special agent as

well as a district director or special agent in charge of the area involved be available for examination by respondents at such evidentiary hearing and that after receiving respondents' evidence it would be determined if discovery was a legitimate need of respondents in these proceedings. The procedure set forth in *United States v. Salter*, 432 F.2d 697 (1st Cir. 1970) requires a respondent to introduce evidence challenging the summons before a discovery request is considered. An evidentiary hearing was held on October 16, 1981 at which the testimony of the special agent in charge of the investigation, García de Villalobos, was received. No other evidence was presented in support of respondents' challenge to the summonses. After reviewing the agent's testimony we hold that respondents have not met their burden in challenging the summons on the grounds of improper purpose, lack of a good faith investigation or on any other appropriate grounds nor did show establish the need to conduct discovery in order to meet that burden.

The statutory scheme which provides for the issuance of summons, 19 U.S.C. Sec. 1509, grants authority in any investigation or inquiry conducted for the purpose of asserting the correctness of any entry for determining the liability of any person for duty and taxes due or which may be due the United States, for determining liability for fines and penalties, or for ensuring compliance with the laws of the United States administered by the U. S. Customs Service to examine, upon reasonable notice, any record, statement, declaration or other document, described in the notice with reasonable specificity, which may be relevant to such investigation or inquiry or to summon, upon reasonable notice, the person who imported the merchandise into the customs territory of the United States to appear before the Customs officer to produce records required to be kept under Section 1308 of Title 19 and to give testimony, under oath, as may be relevant to such investigation. This statute, like Section 7602 of 26 U.S.C. dealing with Internal Revenue summons, makes no distinction between the criminal and civil aspects of an investigation or inquiry by a special agent. A review of the statutory structure which authorizes the use of summonses in investigating tax liability and compliance with Customs laws leads us to the same conclusion reached by the Supreme Court in analyzing the Internal Revenue summons in *United States v. LaSalle National Bank*, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978) that a special agent is authorized to issue summonses in aid of a tax investigation having both civil and possible criminal consequences. Just as in a tax investigation conducted by the Internal Revenue Service, in an investigation conducted by Customs Service the civil and criminal aspects of its inquiry are intertwined and it is not until a recommendation of criminal prosecution to the Department of Justice is made that the two go separate ways. Without doubt the determination of civil tax liability must be at least one of the purposes for issuing the summons, *United States v. Salter, supra*, at 699. This is consequent with the use of summonses in an investigation likely to lead to civil liability as well as to criminal prosecution. *Donaldson v. United States*, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1970); *McGarry v. Riley*, 363 F.2d 421–424 (1st Cir. 1966), cert. den. 385 U.S. 969, 87 S.Ct. 502, 17 L.Ed.2d 433 (1966). The Court in *Donaldson* observed that any decision to recommend prosecution comes only after the investigation is complete or sufficiently far along to support appropriate conclusions and that prosecution will depend on what the investigation reveals. Accordingly, it was held that under Section 7602 of the Internal Revenue Code of 1954 which authorizes examination of records of witnesses to determine tax liability an Internal Revenue summons may be issued in aid of an investigation if it is issued in good faith and prior to a recommendation for criminal prosecution. *Donaldson, supra*, 400 U.S. at 536, 91 S.Ct. at 545. In our case the investigation may result in the imposition of civil penalties under 19 U.S.C. Sec. 1592(a) and 1592(c) which prohibit the importation of goods into the United States by means of any written or oral statement or act which

is material and false and it could also possibly lead to a recommendation to the U. S. Attorney that criminal prosecution be initiated against respondent Clubman, Inc. under 18 U.S.C. Sec. 542 which makes it an offense to enter or attempt to enter into the commerce of the United States any imported merchandise by means of false statements, written or oral, or by means of false or fraudulent practices. Special agent García de Villalobos testified that upon concluding the investigation he would report to a supervisor and that there could be three possible results: a determination that there was no violation of the Customs laws because the initial information received proved to be incorrect, the filing of a civil case or criminal prosecution of respondents. He also stated that he would consult the U. S. Attorney if the result of his investigation pointed to the possibility of initiating civil or criminal proceedings and that he had not made a report to the U. S. Attorney and had not recommended criminal prosecution since they were waiting for judicial enforcement of the summons to get the documents in order to discover if there had been a violation at all. No recommendation was made to the U. S. Attorney to file criminal charges against respondent prior to the issuance of the summons and no such recommendation has been made at this point either. As a matter of fact Clubman originally produced numerous documents for inspection by the special agent and due to misunderstandings and conflicts arising between the latter and the employees of respondent who were in charge of producing the documents requested, respondent decided to challenge the summons and refused to proceed further with the production of records which had begun. However the two basic grounds for challenging the summons have not been proven. The improper purpose challenge has not gone beyond wholly unsupported memorandum allegations. No evidence was presented either as to lack of good faith in the inquiry. The Customs agent testified that the investigation was triggered on confidential information received from an informer, that all the facts that are needed have not been corroborated since the investigation is still under way and that he consulted with his group supervisor and was authorized to conduct a preliminary investigation and to start gathering facts to discover if there was anything behind the confidential information received. He also discussed the data gathered with his supervisor and decided that the summons would aid the investigation. No evidence whatsoever was brought to prove the charge made by respondents against this agent alleging that he used harassment, threats, lies, coercion, and displayed weapons. Even though respondents examined this witness no mention was made of such conduct.

Petitioners, in turn, have shown compliance with the criteria set out in *United States v. Powell*, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). They have demonstrated that Customs investigation pursues a legitimate purpose; that the documents detailed in the supplementary affidavit of special agent García de Villalobos dated March 5, 1981 are relevant to that purpose, that the information requested is under the custody of respondent Clubman, Inc. and not in their possession and that the customary administrative steps have been followed in this case since the moment that the Customs officer, upon receiving confidential information of a possible violation of the Customs laws and consulting with his superiors, found reasonable cause to believe that further investigation was needed and that the documents sought were necessary to determine whether a civil or a criminal violation of Customs laws has occurred. In sum, the summonses have been issued in aid of a legitimate investigation and no proof has been presented to sustain the challenge of improper purpose, lack of a good faith inquiry or harassment.

Respondents also contend that the issuance of a summons is not the proper means and that the particular procedures established in each statute which could possible have been violated ought to be followed, specifically, the pre-penalty notice set forth in 19 U.S.C. Sec. 1592 which is issued after a Customs officer has reasona-

ble cause to believe that a violation exists and the Federal Rules of Criminal Procedure as to any criminal violation under 18 U.S.C. Sec. 542. The purpose of issuing the summonses is precisely to aid the agent in his investigation. Whether it ultimately leads to civil or criminal liability is yet to be seen. The Customs officer is mandated by law to investigate and inquire into possible violations of the Customs laws and the summons is an effective investigative tool. The statutory scheme established in 19 U.S.C. Sec. 1592 as to pre-penalty notice comes into effect after the agent has reasonable cause to believe that a violation exists. This is not incompatible nor does it preclude the use of a summons in his investigation. As to the applicability at this stage of Federal Rules of Criminal Procedure suffice it to say that they govern criminal proceedings from the stage of the filing of the complaint until the trial. They do not reach the preliminary stage represented by an administrative investigation of a Customs agent. It is only when criminal prosecution is begun, following the recommendation of the Customs officer to the U. S. Attorney, that the rules of criminal procedure come into play.

In closing, we address the one contention of respondents which has merit— the lack of specificity of the summons requesting documents in the sense that a time period is not specified. Although respondents can be said to have knowledge of what exactly is covered by the summons since they have had various interviews with the agent in charge of the investigation; they also originally produced a substantial number of documents and have further been informed the details of the documents which are needed and have not been produced in the supplementary affidavit filed, the fact remains that the summons requesting documents must be corrected to set forth with reasonable specificity the records requested. This correction must be made by the U. S. Customs Service and not by amendment ordered by the Court since it was under its authority that the summons was issued. Accordingly, the Motion to Dismiss filed by respondents is DENIED as to

the enforcement of the summons issued to Mr. Francisco Colón to appear to testify yet the summons requesting records from Clubman, Inc. is quashed and petitioner U. S. Customs Service is ORDERED to issue a new summons setting forth with reasonable specificity the documents requested following the outline set forth in the supplementary affidavit of agent García de Villalobos.

SO ORDERED.