727 F.2d 227
 5 ITRD 1801
 UNITED STATES of America and David J. Ripa, Special Agent in
Charge (Cleveland District), United States Customs
Service, Petitioners-Appellees,
v.
Michael C.W. FROWEIN, President, F.A.G. Bearings
Corporation, Respondent-Appellant.
UNITED STATES of America and David J. Ripa, Special Agent in
Charge (Cleveland District), United States Customs
Service, Petitioners-Appellees,
v.
Gino DiTOMASO, Vice President, F.A.G. Bearings Corporation,
Respondent-Appellant.
 No. 509, Docket 83-6274.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 10, 1983.
Decided Jan. 27, 1984.
 
 Andrew L. Lipps, New York City (John M. Dowd, Peter K. Leisure, Michael C. Pelletier, Whitman & Ransom, New York City, of counsel), for respondents-appellants.
 Frank H. Santoro, Asst. U.S. Atty., D.Conn., New Haven, Conn. (Alan H. Nevas, U.S. Atty. D.Conn., New Haven, Conn., of counsel), for petitioners-appellees.
 Before MANSFIELD, PIERCE and McGOWAN*, Circuit Judges.
 PIERCE, Circuit Judge:
 
 
 1
 Michael C.W. Frowein, President for Finance of F.A.G. Bearings Corporation ["F.A.G."], and Gino DiTomaso, Vice President for Finance of F.A.G. [hereinafter collectively referred to as "appellants"], by expedited appeal, seek review of an order, entered September 9, 1983, in the United States District Court for the District of Connecticut, Warren W. Eginton, Judge, granting the enforcement of two Customs Service summonses served upon appellants.
 
 
 2
 For the reasons set forth below, we affirm with directions that the mandate issue forthwith.
 
 I. BACKGROUND
 
 3
 F.A.G. is the exclusive United States importer of ball and roller bearings and anti-friction balls and rollers sold by its West German parent, F.A.G. Kugelfischer Georg Schaefer & Company ["Kugelfischer"]. The controversy between the Customs Service and F.A.G. arose on or about November 28, 1978, when a customs official in Ohio reportedly discovered that certain bearings imported by F.A.G. did not match either the description on the boxes containing the bearings or the description on the invoices issued to F.A.G. by Kugelfischer concerning the bearings. The matter was referred to the Office of Investigations of the Customs Service and a civil investigation was initiated in December, 1978. On April 26, 1979, the District Director of the Customs Service in Ohio issued a Pre-Penalty Notice alleging, inter alia, that F.A.G. had imported merchandise between 1972 and 1978 based on false documents, in violation of 19 U.S.C. Secs. 1481, 1484 and 1592.
 
 
 4
 Prior to the issuance of the Pre-Penalty Notice, the matter was referred to the United States Attorney for the Northern District of Ohio for criminal investigation. A federal grand jury conducted an investigation of F.A.G. from early 1979 to early 1982. By letter dated June 3, 1982, the United States Attorney notified F.A.G. that the grand jury investigation had been terminated and that he had declined criminal prosecution. Thereafter, the Customs Service, without the knowledge of F.A.G., asked the United States Attorney to reconsider his decision not to prosecute. The United States Attorney, however, reaffirmed his initial decision in a letter to the Customs Service dated December 14, 1982.
 
 
 5
 During the early part of 1983, Customs Service representatives interviewed several officers and employees of F.A.G. and Kugelfischer, and examined documents provided by F.A.G. According to the Customs Service, during the course of these interviews specific evidence was developed that the prices stated on certified invoices submitted to the Customs Service by F.A.G. were not necessarily the actual prices paid for the imported merchandise. As a result of this discovery, the Customs Service decided that additional information was required. On May 6, 1983, the Service notified F.A.G. that it wanted to audit the company's financial records to determine the extent of any lost revenue attributable to the alleged discrepancy between declared values and actual payments. Appellees assert that F.A.G., by letter dated May 27, 1983, refused to permit the audit. On June 14, 1983, the Customs Service informed F.A.G. that the auditors would arrive on June 16, 1983, and recommended cooperation. F.A.G. requested more time to consider the matter, but, not wishing to wait, the Customs Service served the two summonses that are the subject of this appeal--one on June 16, 1983, to Frowein, and one on June 23, 1983, to DiTomaso. The summonses call for the production of documents relating to F.A.G.'s importation, between 1972 and 1978, inclusive, of bearings manufactured by Kugelfischer.
 
 
 6
 When the appellants refused to produce the documents sought, the Customs Service commenced a separate enforcement proceeding against each appellant in the District Court for the District of Connecticut, which proceedings were consolidated before Judge Eginton on July 19, 1983. Between August 10 and August 17, 1983, the district judge devoted four days to an evidentiary hearing. At the outset of the hearing on August 10, the district court held that on the basis of affidavits and other documentation previously filed, the Customs Service had met its burden to justify enforcement of the summonses, but allowed F.A.G. a full opportunity to demonstrate why enforcement was not warranted. At the conclusion of the hearing, on August 17, 1983, Judge Eginton ruled that the summonses would be enforced.
 
 
 7
 Prior to the entry of the district court's order on September 9, 1983, the Customs Service, on August 23, 1983, issued a Notice of Penalty to F.A.G. in the amount of $451,915,104 as a civil penalty for the importation of goods based on false documentation in violation of 19 U.S.C. Secs. 1481, 1485 and 1592. F.A.G. promptly moved in the district court to reopen the record and admit the penalty notice, and also urged that the issuance of the penalty notice terminated the civil investigation and deprived the district court of jurisdiction to enforce the summonses. On September 9, 1983, the district court reopened the record to receive the evidence, but denied appellants' motion to dismiss, and signed the enforcement order. Thereafter, the Customs Service referred the penalty claim to the Department of Justice, and on September 14, 1983, the day before certain applicable statutes of limitations expired, the Department of Justice commenced an action against F.A.G. in the United States Court of International Trade to recover the penalties allegedly owed by the company.
 
 
 8
 Also on September 14, 1983, appellants filed a Notice of Appeal challenging the September 9, 1983 enforcement order. A panel of this court, on September 28, 1983, granted appellants' motion for a stay of Judge Eginton's order pending the outcome of this appeal.
 
 II. DISCUSSION
 
 9
 In this appeal, appellants contend, inter alia, (1) that the documents summoned by the Customs Service are not relevant to any matters under investigation; (2) that the district court exceeded its jurisdiction in enforcing the summonses; and (3) that the Customs Service exceeded its statutory power in summoning the documents. These contentions will be discussed seriatim.
 
 A. Relevance
 
 10
 The Customs Service, pursuant to the powers given it by 19 U.S.C. Sec. 1509(a)(2) (1982), summoned appellants to appear and produce invoices and payment records relating to merchandise imported by F.A.G. between the years 1972 and 1978, inclusive. When the appellants failed to comply with the summonses, the Customs Service sought judicial enforcement thereof pursuant to 19 U.S.C. Sec. 1510 (1982). In making its determination to enforce the summonses, the district court found United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), instructive. In Powell, the Supreme Court set forth preconditions to the judicial enforcement of Internal Revenue Service ["IRS"] summonses. The Powell Court stated that the agency "must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the [agency's] possession, and that the administrative steps required by the Code have been followed." Id. at 57-58, 85 S.Ct. at 254-55. Judge Eginton found that the Customs Service had satisfied the Powell conditions and, accordingly, ordered enforcement. On appeal, appellants contend that the district judge erred in finding that the Customs Service met the relevance criterion of the Powell test. We note that in addition to the penalty action under 19 U.S.C. Sec. 1592 currently pending in the United States Court of International Trade, another dispute exists between F.A.G. and the Customs Service. This dispute concerns the duty due and owing by F.A.G. for bearings imported between 1972 and 1978. According to appellants, the materials summoned are not relevant either to the determination of the amount of duties owed by F.A.G. or to the assessment of a penalty under Sec. 1592. We find this argument to be without merit.
 
 
 11
 The invoices and financial records summoned will enable the Customs Service to determine the prices paid by F.A.G. to Kugelfischer for the imported goods. The record below demonstrates that the prices paid by F.A.G. are clearly relevant to a determination of the duty owed, which in turn may have an effect on the amount of the penalty assessed.[1] Further, the summoned materials are independently relevant to the assessment of the penalty under Sec. 1592. The Customs Service reportedly has discovered information indicating that the invoices submitted to Customs by F.A.G. do not reflect the actual prices paid for the merchandise imported. Since a penalty action under Sec. 1592 is premised on inaccuracies regardless of whether there is a loss of revenue, 19 U.S.C. Sec. 1592(a), at the very least, the summoned material will shed light on the determination of whether inaccuracies exist. Accordingly, we hold that the district court correctly found that the materials sought are relevant. See United States v. Arthur Young & Co., 677 F.2d 211, 216 (2d Cir.1982) (citing United States v. Noall, 587 F.2d 123 (2d Cir.1978), cert. denied, 441 U.S. 923, 99 S.Ct. 2031, 60 L.Ed.2d 396 (1979)), cert. granted, --- U.S. ----, 103 S.Ct. 1180, 75 L.Ed.2d 429 (1983).
 
 B. The District Court's Jurisdiction
 
 12
 Appellants contend that the issuance of the penalty claim on August 23, 1983, rendered the summonses moot and, further, that the subsequent referral to the Department of Justice to prosecute a civil action in the United States Court of International Trade stripped the district court of jurisdiction to enforce the summonses. According to appellants, 19 U.S.C. Sec. 1592 mandates a three-stage scheme consisting of pre-penalty, investigatory, and penalty stages, and once a penalty claim is issued the investigatory stage abruptly ends, thereby depriving the Customs Service of its ability to seek information. We reject this interpretation. Although section 1592 provides for the issuance of a pre-penalty notice and the subsequent issuance of a penalty claim, it does not provide for an isolated, intermediate investigatory stage as is urged by appellants.
 
 
 13
 Nevertheless, appellants argue that the district court was stripped of its jurisdiction to enforce the administrative summonses once the matter was referred to the Department of Justice for civil prosecution. In support of this argument they rely heavily on the Supreme Court decision in United States v. LaSalle National Bank, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978). Their reliance, however, is misplaced. In LaSalle, the Court held that the referral of a case to the Department of Justice for criminal prosecution terminates the power of the IRS to compel enforcement of its summonses. Id. at 311-13, 98 S.Ct. at 2364-66. While the Court acknowledged that "[t]he Government does not sacrifice its interest in unpaid taxes just because a criminal prosecution begins," id. at 311-12, 98 S.Ct. at 2364-65, it stated that its holding is a "prophylactic" restraint that serves the policies of preserving the limitations on the government's right to discovery in criminal cases and avoiding infringement on the role of the grand jury as a principal tool of criminal accusation. Id. at 312, 98 S.Ct. at 2365. According to the LaSalle Court, "[t]he likelihood that discovery would be broadened or the role of the grand jury infringed is substantial if post-referral use of the summons authority were permitted." Id.
 
 
 14
 However, LaSalle is not controlling in this case. The policy considerations served by the LaSalle holding are absent in the context of a civil proceeding and, therefore, would not be furthered by extending LaSalle to civil actions. In United States v. Kulukundis, 329 F.2d 197 (2d Cir.1964), this court recognized the difference between the initiation of criminal and civil proceedings by the United States. In that case, the IRS made penalty assessments against two individuals and then the government commenced a civil action in district court to recover the sums so assessed. Thereafter, the IRS issued summonses seeking information about both the tax liability and the collection of the tax liability. When both individuals refused to comply with the summonses, the government applied to the district court for an order directing compliance. The district judge enforced the portions of the summonses seeking information on the "collection" of the liability, but, because the civil action was pending, refused to enforce the provisions seeking information on the existence of liability on the ground that the enforcement of the latter provisions would circumvent normal discovery under the federal rules of civil procedure.
 
 
 15
 Because the government did not appeal in Kulukundis, the district court's refusal to enforce all of the provisions of the summonses was not before this court. Nevertheless, Judge Friendly, writing for the court, noted that "we would not wish to be committed to the district judge's view that the summonses were unauthorized insofar as they sought to inquire into the existence of tax liability." Id. at 199. Judge Friendly acknowledged the reasonableness of barring the use of administrative summonses in aid of criminal prosecutions, but stated that "it would be quite a different matter for the courts to construct a condition whereby the Government's bringing a civil suit ... would deprive it of a remedy which the letter of the Code assuredly gives." Id. Moreover, the court held that the district judge properly ordered enforcement of the summonses insofar as they related to the collection of taxes, despite the pendency of the government's civil suit.
 
 
 16
 Both the holding and the dicta of Kulukundis are applicable here. Once civil proceedings are underway before the United States Court of International Trade, we perceive of no policy consideration, at least upon the facts presented in this case, that suggests any need for curtailment of interagency cooperation between the Customs Service and the Department of Justice. Indeed, as the LaSalle Court noted, "[i]nteragency cooperation on the calculation of the civil liability is ... to be expected and probably encourages efficient settlement of the dispute." 437 U.S. at 312, 98 S.Ct. at 2365. Consequently, we reject appellants' contention that the district court was without jurisdiction to enforce the summonses at issue herein merely because of the initiation by the Department of Justice of a civil action against F.A.G.
 
 
 17
 There is yet another reason to reject appellants' contentions that the summonses are moot and that the district court lacked jurisdiction: as noted earlier, in addition to the penalty action under Sec. 1592 currently pending, there remains a question concerning the amount of duty due and owing by F.A.G. for bearings imported between 1972 and 1978. The summonses served upon appellants, and the Petitions and Affidavits submitted for the enforcement thereof, quite clearly demonstrate that the summoned materials are intended to provide information for the duty determination as well as for the Sec. 1592 penalty action. The fact that a duty determination must be made and that the summonses will provide materials in aid of that determination, refutes appellants' mootness claim and provides an independent basis for the enforcement of the summonses.
 
 C. The Customs Service's Summons Power
 
 18
 The authority for the Customs Service to summon records is set forth in 19 U.S.C. Sec. 1509(a) (1982),[2] as amended by the Customs Procedural Reform and Simplification Act of 1978 ("Act"), Pub.L. 95-410, 92 Stat. 888. Pursuant to Sec. 1509(a)(2), the Customs Service may summon upon reasonable notice specified persons and require such persons "to produce records, required to be kept under section 1508 of this title." Section 1508, in turn, which was added by the Act, imposes recordkeeping requirements on those who import or cause goods to be imported. Subsection (a) of Sec. 1508,[3] entitled "Requirements," describes the types of documents that must be maintained. Under the heading "Period of Time," Sec. 1508(b) states that "[t]he records required by subsection (a) ... shall be kept for such periods of time, not to exceed 5 years from the date of entry, as the Secretary shall prescribe."
 
 
 19
 Frowein and DiTomaso contend that sections 1508 and 1509, when read together, limit the Customs Service's summons power to documents and records that pertain to merchandise that entered the United States within the 5 years immediately preceding service of the summons. They assert that the "required to be kept under section 1508" clause contained in section 1509(a)(2) limits the summons power because of the 5 year retention requirement found in Sec. 1508(b). Thus, according to appellants, the Customs Service can only obtain records dating back to June, 1978, five years prior to the service of the summonses at issue herein.
 
 
 20
 The government, on the other hand, argues that the "required to be kept" language of Sec. 1509(a)(2) refers to the type of documents that must be maintained under Sec. 1508(a) and does not place a time limitation on the records subject to summons. In support of this argument the government asserts that the word "required" in Sec. 1509(a)(2) relates more directly to the word "Requirements" in Sec. 1508(a), and that it would be incongruous to conclude that Congress intended to provide Customs with authority to examine any document relevant to its inquiry under Sec. 1509(a) and then limit the availability of those documents to five years--a view with which Judge Eginton agreed. Based upon our review of the language of the statute and its legislative history, we conclude that the proper interpretation of the "required to be kept" language is that it refers to the type of documents subject to summons and not the age of those documents. Although the language of sections 1508 and 1509 does not unambiguously support either parties' construction, in our opinion, the government's interpretation is more logical. The Act, in addition to adding the recordkeeping requirement of section 1508 and amending section 1509, also amended 19 U.S.C. Sec. 1621. That section, as amended, provides that the government has five years from the date of discovery to commence litigation for alleged violations of 19 U.S.C. Sec. 1592 arising from fraud. If we were to accept appellants' construction of the summons provision, the Customs Service would be powerless to investigate violations discovered more than five years after importation, since the documents relating to those violations would be immune from process.
 
 
 21
 Further, the legislative history of the 1978 Act supports the conclusion that Congress did not intend to limit the summons power as is urged by appellants. The purpose behind the recordkeeping and summons provisions of the Act was to enhance the investigatory powers of the Customs Service. S.Rep. 778, 95th Cong., 2d Sess. 2, 13-14, reprinted in 1978 U.S.Code Cong. & Ad.News 2211, 2213, 2224-25; H.R.Rep. No. 621, 95th Cong., 1st Sess. 2, 9 (1977). Prior to 1978, importers were not required to keep records. Congress recognized that the absence of such a requirement frequently thwarted Customs' investigations seeking to uncover possible fraud and, thus, Congress added the recordkeeping requirement to the Act to "enhance Customs' ability to insure compliance with [the] Customs laws." S.Rep. No. 778 at 13-14, U.S.Code Cong. & Ad.News at 2224; see H.R.Rep. No. 621 at 7-8. Also prior to 1978, the authority of customs officials to summon records was limited to inquiries about importations made during the preceding year or unliquidated entries. Finding that "the 1-year limitation on Customs' authority under current section [1509] hinders fraud investigations which often involve transactions over a period of years," S.Rep. No. 778 at 13, U.S.Code Cong. & Ad.News at 2225, Congress amended the section to permit Customs to "examine records and to take testimony ... to insure compliance with the laws and regulations of the United States." Id., U.S.Code Cong. & Ad.News at 2224. There is no indication in the legislative history that the five-year recordkeeping requirement was intended to limit the documents subject to summons. To the contrary, our analysis of the legislative history indicates that the only purpose for the five-year time limit was to prevent the record retention burden from becoming unreasonable. See H.R.Rep. No. 621 at 8. This concern is not applicable herein since appellants have, in fact, retained the records sought.
 
 
 22
 The legislative history clearly demonstrates that the 1978 changes were intended to give the Customs Service greater access to records relevant to an investigation. The position urged by appellants, however, would have the effect of reducing the summons power on the facts presented herein. The majority of entries in this case are unliquidated and, thus, the records relevant to those entries could have been summoned under the old law without limitation.[4] Under appellants' restrictive interpretation of the 1978 changes, most of those records would now be beyond Customs' reach. We believe this would run counter to the Congressional purpose underlying the 1978 changes, especially in a case, such as this one, where the records sought are in existence and have been retained.
 
 III. CONCLUSION
 
 23
 We therefore affirm the district court's order with directions that the mandate issue forthwith.
 
 
 
 *
 Senior Judge of the United States Court of Appeals for the District of Columbia, sitting by designation
 
 
 [1]
 The amount of the penalty imposed for violations of 19 U.S.C. Sec. 1592 may depend upon the amount of revenue lost. 19 U.S.C. Secs. 1592(c)(2) & (3)
 
 
 [2]
 Section 1509(a) provides:
 (a) Authority.--In any investigation or inquiry conducted for the purpose of ascertaining the correctness of any entry, for determining the liability of any person for duty and taxes due or duties and taxes which may be due the United States, for determining liability for fines and penalties, or for insuring compliance with the laws of the United States administered by the United States Customs Service, the Secretary (but no delegate of the Secretary below the rank of district director or special agent in charge) may--
 (1) examine, or cause to be examined, upon reasonable notice, any record, statement, declaration or other document, described in the notice with reasonable specificity, which may be relevant to such investigation or inquiry;
 (2) summon, upon reasonable notice--
 (A) the person who imported, or knowingly caused to be imported, merchandise into the customs territory of the United States,
 (B) any officer, employee, or agent of such person,
 (C) any person having possession, custody, or care of records relating to such importation, or
 (D) any other person he may deem proper,
 to appear before the appropriate customs officer at the time and place within the customs territory of the United States specified in the summons (except that no witness may be required to appear at any place more than one hundred miles distant from the place where he was served with the summons), to produce records, required to be kept under section 1508 of this title, and to give such testimony, under oath, as may be relevant to such investigation or inquiry; and
 (3) take, or cause to be taken, such testimony of the person concerned, under oath, as may be relevant to such investigation or inquiry.
 
 
 [3]
 Section 1508(a) provides:
 (a) Requirements.--Any owner, importer, consignee, or agent thereof who imports, or who knowingly causes to be imported, any merchandise into the customs territory of the United States shall make, keep, and render for examination and inspection such records (including statements, declarations, and other documents) which--
 (1) pertain to any such importation, or to the information contained in the documents required by this chapter in connection with the entry of merchandise; and
 (2) are normally kept in the ordinary course of business.
 
 
 [4]
 See 19 U.S.C. Sec. 1509 (1976); H.R.Rep. No. 621, 95th Cong., 1st Sess. 9 (1977)