**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Israel RUBIN, as President of I.D.
Enterprises, Inc.; I.D. Enterprises,
Defendants–Appellants.**

No. 92–55367.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted August 4, 1993.

Decided Aug. 18, 1993.

John N. Politis, Elon A. Pollack, Politis, Pollack & Doram, Los Angeles, CA, for defendants-appellants.

Robert I. Lester, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: NOONAN, FERNANDEZ and KLEINFELD, Circuit Judges.

---

NOONAN, Circuit Judge:

This case is one of first impression as to the subpoena powers of the United States Customs Service (Customs). Invoking 19 U.S.C. § 1510, the United States sought enforcement of an administrative subpoena issued by the Customs under authority of 19 U.S.C. § 1509 and directed to I.D. Enterprises, Inc. and its president, Israel Rubin (here collectively I.D.). The district court ordered enforcement. I.D. appealed. We reverse and remand.

## FACTS

I.D. is a wholesaler of watches, most of which are imported. It imports more than 250,000 watches every month, most of which are either quartz or mechanical. The great bulk of the watches come by air; there are also occasional shipments by sea. I.D. places its orders abroad by telephone, or in person, or sometimes by letter.

In I.D.'s fiscal year 1989, the year in question, I.D. employed Norman Krieger, Inc., a customs broker licensed by the Customs, to prepare and submit necessary documents to Customs. When the goods arrived by air the Customs documents were delivered directly to Krieger by the importing carrier. The documents for ocean shipments came either to Krieger, I.D. or I.D.'s bank. Krieger would prepare a Customs Entry and Entry Summary and attach them to a copy of the invoice, packing list and bill for each particular transaction, and file these documents with Customs.

## PROCEEDINGS

Customs began a routine audit of I.D. with an administrative summons, dated March 28, 1991, for certain records relating to I.D.'s importation of merchandise for its fiscal year August 1, 1988–July 31, 1989. The summons listed twenty categories of records that I.D. was asked to produce. I.D. responded by supplying a portion of the records asked. On December 18, 1991 the United States filed this action in the district court to enforce the summons. On January 2, 1992 the district court issued an order to show cause why the summons should not be enforced.

In support of its complaint, the government filed the declaration of Timothy Strinden, an auditor with the Audit Division of Customs. Strinden stated that since January 17, 1991 he had been conducting an audit of I.D. to verify that I.D. had submitted accurate, complete and current information to the Customs relating to its imports for its fiscal year 1989. His declaration stated why in his view the documents that summarize the numerous import transactions, such as the general ledger and the complete financial statements, were "indispensable." He stated that these "summary records" were indispensable because the documents that related specifically to particular transactions could not be "audited in a vacuum." The summary documents in his view provided "important clues" as to whether the importer had complied with Customs laws. In his experience it was "not unusual" for an importer seeking to evade duties to provide one invoice for Customs and keep another directly reflecting the transaction. It was also not unusual for an importer to hide certain dutiable expenses, such as assistance to foreign manufacturers, in accounts apparently related solely to domestic transactions. He also maintained that without the summary documents it was impossible to determine whether the importer had in fact produced all the documents that had been subpoenaed.

Strinden's declaration then called attention to what had awakened suspicion in the response of I.D. to Customs' first request. A letter from I.D.'s counsel of January 23, 1991 had promised to make available for inspection I.D.'s "purchase journal"; but now I.D.'s bookkeeper, Vida Falatoon, had filed a declaration stating: "We have no purchase journal." Again, the D/P (Draft Payment) control record of I.D. carried the legend on the bottom of each page "accounts payable ledger"; but Vida Falatoon's declaration stated that I.D. "does not maintain accounts payable ledgers." Moreover in certain of I.D.'s records, contrary to accepted accounting methodology, debits and credits were reversed with the establishment of a financial obligation being shown as a debit and payment being shown as a credit. This practice seemed odd, particularly since I.D. employed

an outside accountant who "would normally quickly detect and correct this error."

I.D. responded to the Strinden declaration in two ways. It filed objections to the admissibility of his declaration, challenging his personal knowledge of the facts asserted. It also requested the opportunity to cross-examine. The request to cross-examine was withdrawn two days after it was filed.

On February 3, 1992 the district court conducted a hearing on the government's complaint. The government said that the "key issue" was what documents "pertained" to importations within the meaning of the statute authorizing the summons. The court said that it would order the government to submit an order setting out what "had to be produced that has not been produced. I just can't give you a blank order and say go in there and make yourself at home." Counsel for I.D. offered an explanation of the apparent discrepancy as to the purchase journal. Counsel also indicated that I.D. would like to take discovery. The court said the matter would be continued two weeks and it would "have to find out what your problems are in the meantime."

A second hearing was held on February 18, 1992. By this time the government had reduced the list of documents that it wanted and stated them to be as follows: correspondence, including faxes and facsimiles, relating to importation; all contracts, whether transaction specific or relating to the price of a year's importation; purchase orders; debit notes; credit notes; inventory records; records relating to assists to foreign suppliers; sight drafts; complete bank statements; letters of credit; wire transfers; a complete Cash Disbursements Journal; a complete statement of income; a complete balance sheet; the General Ledger; the General Ledger trial balance; subsidiary ledgers; purchase journals; accounts payable record and/or journal; journal entries; and chart of accounts.

At the hearing that followed on February 18, 1992, counsel for I.D. argued that because of the way in which duty on watches was calculated the more general information sought by the government was irrelevant. That information, he contended, did not pertain to importation. He concluded by stating: "We think that counsel is right. This case comes down to one very important thing: did Congress mean it when it said 'pertains to importations'. We think it did and the records supplied to Customs reflect it."

Counsel for I.D. made no request for discovery and did not pursue the objection originally made to the Strinden declaration. The next day the court issued its order enforcing the government's summons as originally filed, not as modified by the government in response to the court's request for a narrower set of requirements.

I.D. appeals.

## ANALYSIS

■ *Mootness.* The government contends that the appeal is moot: I.D. has turned over the requested records. *United States v. Kersting,* 891 F.2d 1407 (9th Cir.1989), *cert. denied,* 498 U.S. 812, 111 S.Ct. 49, 112 L.Ed.2d 25 (1990). But since *Kersting* was decided, the Supreme Court has held that compliance with a subpoena does not moot an appeal: the government can still be compelled to return the records if they were improperly obtained. *Church of Scientology v. United States,* —— U.S. ——, ——, 113 S.Ct. 447, 449, 121 L.Ed.2d 313 (1992). Hence this appeal is not moot.

■ *Plain Error.* The district court signed the order originally prepared by the government, unmodified by the government's concession that it now needed fewer documents. This action on its face was error and requires reversal.

■ *What The Customs Can Summons.* Under 19 U.S.C. § 1508(a) an importer of "any merchandise" into the customs territory of the United States is required to make, copy and render for examination records which "(i) pertain to any such importation" and "(ii) are normally kept in the ordinary course of business." As the foregoing account shows, the argument in the district court focused on the meaning of "pertain to any such importation," the government contending for a broad reading and I.D. saying

the statutory language applied only to information that was specific to a particular import transaction.

The statute under which the government is proceeding, 19 U.S.C. § 1509, gives Customs authority to examine records in "any investigation or inquiry conducted for the purpose of ascertaining the correctness of any entry, for determining the liability of any person for duty and taxes due or duties and taxes which may be due the United States, for determining liability for fines and penalties, or for insuring compliance with the laws of the United States administered by the United States Customs Service...." 19 U.S.C. § 1509(a). This authority is to examine "any record, statement, declaration or other document ... which may be relevant to such investigation or inquiry." § 1509(a)(1). This section also gives the Customs authority to summon the importer "to produce records [required to be kept under § 1508]" and to give under oath such testimony "as may be relevant" to the investigation or inquiry. § 1509(a)(2).

It is apparent that § 1509 makes a distinction between records and testimony that are "relevant" to an inquiry and records "required to be kept under § 1508." The government has made a showing that the summary records it seeks are relevant to its inquiry. Therefore, under the authority of § 1509(a)(1) these records could be examined at the importer's. The more difficult question is whether they "pertain to any such importation." Under the normal standard of statutory interpretation that seeks to give significance to distinct language in the statute, it must be concluded that the records required to be kept by § 1508 are distinct from those that are relevant to the kind of inquiry authorized by § 1509.

We remand to the district court to determine what records are required to be kept under § 1508 and are therefore subject to summons. To qualify under § 1508 these records must meet the two statutory criteria; they must "pertain to any such importation" and they must be "normally kept in the ordinary course of business." It is the burden of the government to show how a particular record pertains to "any such" importa-

tion and to show that it is a record "normally kept in the ordinary course of business."

The district court shall order that the government return to I.D. any records which do not qualify under § 1508 but which have been delivered to the government pursuant to the district court's prior order, and that the government also return or destroy all copies of those records. *See Church of Scientology,* —— U.S. at ——, 113 S.Ct. at 450.

The order of enforcement is **REVERSED.** The case is **REMANDED** for proceedings consistent with this opinion.