**UNITED STATES of America, et al., Petitioners**

v.

**RAINBOW RUGS, INC., Respondent.**

**Misc. No. 93–92–P–DMC.**

United States District Court, D. Maine.

Oct. 8, 1993.

David R. Collins, Asst. U.S. Atty., Portland, ME, for petitioners.

Robert E. Mongue, Kennebunk, ME, James P. Sullivan, Sullivan & Lynch, Boston, MA, for respondent.

## MEMORANDUM DECISION AND ORDER

COHEN, United States Magistrate Judge.

Pursuant to 19 U.S.C. § 1510, the United States Customs Service ("Customs") has petitioned for judicial enforcement of an administrative summons served upon Rainbow Rugs, Inc. requesting various documents. The summons seeks documentation allegedly related to Rainbow Rugs' importation of certain Lauralle and Farsi-style rugs between August 1992 and January 1993. Exhibit "A" to Petition to Enforce. Customs claims that this information is necessary to determine "the appropriate valuation of [Rainbow Rugs'] imported merchandise and the liability for duty and taxes due the United States in connection therewith ..." and, as such, is required to be produced under 19 U.S.C. § 1509. Petition at ¶ 4.

On June 30, 1993, the date set for compliance with the summons, the respondent failed to produce the documents as requested. *Id.* at ¶ 10. Subsequently, on August 12, 1993, I issued an order to Rainbow Rugs to show cause why it should not be required to obey the summons. Order to Show Cause (Docket No. 3). At a hearing held on September 8, 1993 Rainbow Rugs argued that the summons should not be enforced because

(1) the requested documents do not fall within the proper scope of Customs' statutory summons power and (2) Customs' investigation is based upon erroneous information volunteered by a former Rainbow Rugs executive. Accordingly, Rainbow Rugs requested an opportunity to examine various Customs agents and officials to inquire into the legitimacy of the government's investigation. Specifically, Rainbow Rugs wishes to cross-examine special agent Scott Shank, regulatory auditor Derek Bottari and import specialist Leo Maciejweski about the source of the information that led to their investigation. Rainbow Rugs also wants to inquire into the hierarchical structure of the Customs Service to challenge the validity of the investigation. Based upon Rainbow Rugs' representations at the hearing, I tentatively ordered that Customs should make the requested individuals available for examination at an evidentiary hearing scheduled for October 18, 1993.

As requested, the parties have thoroughly briefed the issues concerning both the scope of the summons and the scope of the upcoming hearing. Based upon my review of the parties' submissions and the applicable law, I am issuing this memorandum decision and order to clarify the procedures for and scope of the upcoming hearing. Because I am convinced that Customs has made a *prima facie* showing for enforcement of the summons and that the legitimacy of the government's investigation is not truly at issue, I now direct that at the upcoming hearing Rainbow Rugs shall have the burden of demonstrating that the requested documents do not satisfy the applicable statutory criteria and that the scope of the hearing shall be limited to an inquiry into the validity of the summons.

### SCOPE OF THE SUMMONS

■ Under 19 U.S.C. § 1509(a), for the purposes of conducting an investigation to determine the duty liability of an importer or to otherwise insure compliance with the customs laws, Customs may summons an importer to produce records "required to be kept under section 1508 of this title." Under the recordkeeping provision of 19 U.S.C.

§ 1508, any person who imports any merchandise into the United States

> shall make, keep, and render for examination and inspection such records (including statements, declarations, and other documents) which—
>
> > (1) pertain to any such importation, or to the information contained in the documents required by this chapter in connection with the entry of merchandise; and
> >
> > (2) are normally kept in the ordinary course of business.

19 U.S.C. § 1508(a). Synthesizing both sections, Customs may summons for examination any records an importer is statutorily required to maintain as pertaining to a particular importation and that are normally kept in the ordinary course of business.

■ Within this statutory framework, the parties dispute whether the requested documents actually "pertain" to Rainbow Rugs' importation of Lauralle and Farsi-style rugs. Customs contends that the requested documents pertain to importations made by Rainbow Rugs "in that they contain information relating to the value of such imports." Petitioners' Supplemental Memorandum in Response to Respondent's Opposition to Enforce Summons ("Petitioners' Supplemental Memorandum") at 5 (Docket No. 10). However, because the requested documents generally relate to the sale of the finished products, Rainbow Rugs contends that they do not pertain to the importation transaction of the rugs in their original bulk form. Memorandum of Respondent in Opposition to Petition to Enforce United States Customs Service Summons ("Respondent's Memorandum") at 5 (Docket No. 4). Rather, Rainbow Rugs argues, the requested documents are of a general business nature which are not subject to Customs' recordkeeping requirement because they have nothing to do with the import transactions. *Id.* at 10–11.

There are no cases discussing the scope of the word "pertain" as used in the statute. Indeed, there is very little caselaw on the entire subject of Customs' administrative summons power. The recently decided *Rubin* case is the only full judicial treatment of the scope of Customs' statutory summons

power. *See United States v. Rubin,* 2 F.3d 974 (9th Cir.1993). In *Rubin,* the Ninth Circuit noted that the statutory language makes a distinction between documents that are "relevant" to an investigation, and therefore open to *examination,* and those that the importer is "required to keep" under section 1508, and therefore subject to *production. Id.* at 977. Accordingly, because the district court had only inquired into the relevancy of certain requested documents, the court remanded the case for a determination whether the requested documents were "required to be kept" under section 1508.

> We remand to the district court to determine what records are required to be kept under § 1508 and are therefore subject to summons. To qualify under § 1508 these records must meet the two statutory criteria; they must "pertain to any such importation" and they must be "normally kept in the ordinary course of business." It is the burden of the government to show how a particular record pertains to a particular "any such" importation and to show that it is a record "normally kept in the ordinary course of business."

*Id.* at 977; *see also United States v. Frowein,* 727 F.2d 227, 233 (2d Cir.1984) ("[W]e conclude that the proper interpretation of the 'required to be kept' language is that it refers to the type of documents subject to summons....").

Thus, assuming for the moment that Rainbow Rugs has kept the requested records in the ordinary course of its business, the outcome of this enforcement proceeding depends upon the breadth of the phrase "pertains to any such importation." Rainbow Rugs argues that the phrase is limited to records that relate solely to the import *transaction.* Respondent's Memorandum at 4, 5. That is, once the specific transaction of importing the goods into the United States is complete, there is no further recordkeeping requirement under section 1508. *See id.* Customs, on the other hand, argues for a less restrictive interpretation of the phrase. Customs argues that the phrase "pertains to any such importation" encompasses records that relate to the value of the importation. Petitioners' Supplemental Memorandum at 5.

After carefully considering both positions, I conclude that the government's interpretation of the phrase finds greater support in the statute, legislative intent and common sense.

First, the word "pertain" is very sweeping in nature, not requiring an overly close nexus to the subject matter to which it refers. Indeed, under common usage, the word "pertain" merely requires some connection, even if weak, to the subject matter. *See Webster's Third New International Dictionary* 1688 (1981) ("to have some connection with or relation to something"). Certainly, documents related to the valuation of imported goods "pertain" in some sense to the importation of those goods, especially where the importer was required to declare the value of those goods at the time of importation. *See* 19 U.S.C. § 1481(a)(6); 19 C.F.R. §§ 141.-86(a)(6); 142.3(a)(3).

Second, as the Second Circuit has noted, the recordkeeping provision of section 1508 was "intended to give the Customs Service greater access to records relevant to an investigation." *Frowein,* 727 F.2d at 234. Thus, because the recordkeeping requirements were added to "enhance Customs' ability to insure compliance with the Customs' laws," the provisions should not be read so narrowly as to unduly restrict the summons power of the Customs Service. *See id.; In re Clubman, Inc.,* 532 F.Supp. 92, 93 (D.P.R. 1982) ("[S]ince the motive for adding the record-keeping requirement to the Act was to enhance Customs' ability to ensure compliance with Customs law ..., adopting the restrictive interpretation proposed by respondents is contrary to the purpose of the amendment.").

Finally, although the government has not argued this position expressly, the statutes and regulations in question authorize Customs to summons records and documents that substantiate the correctness of information contained in the documentation required in connection with the entry of imported merchandise. *See* 19 U.S.C. §§ 1508, 1509. The authority for this power comes from the same recordkeeping provision which contains the "pertains to any such importation" clause. Specifically, under the full text of the

recordkeeping provision of 19 U.S.C. § 1508, any person who imports any merchandise into the United States shall maintain records which "pertain to any such importation, *or to the information contained in the documents required by this chapter in connection with the entry of merchandise....*" Thus, under section 1508, importers are not only required to maintain records which "pertain to any such importation," whatever that phrase may mean, but are also required to maintain a second category of records and documents which pertain to the information contained in the entry documents they are required to file with Customs. This particular recordkeeping requirement supplements Customs' authority under section 1509 to conduct an investigation into "the correctness of any entry" for insuring compliance with the customs laws. *See 19 U.S.C. § 1509.*

At the time of entry, importers are statutorily required to provide an invoice which states the value of the imported merchandise. *See* 19 U.S.C. § 1481(a)(6); 19 C.F.R. §§ 141.86(a)(6); 142.3(a)(3). Therefore, under its authority to substantiate the correctness of this information pursuant to section 1509, Customs can apparently summons those Rainbow Rugs records which pertain to the declaration of value contained in the original invoice as these are records Rainbow Rugs is statutorily required to keep. Based on Customs' petition, the documents requested by the administrative summons are necessary to substantiate the appropriate value of Rainbow Rugs' imported merchandise. *See* Petition at ¶ 4. More specifically, according to the declaration of Derek L. Bottari, a Customs auditor, the listed documents are all documents that pertain to the determination of the deductive valuation of the imported merchandise. *See* Declaration of Derek L. Bottari ("Bottari Declaration") at ¶ 5 (Docket No. 9). Deductive valuation is a statutory method for appraising the value of imported merchandise when a more direct method of appraisal is unavailable. *See* 19 U.S.C. § 1401a(d). Thus, because the documents apparently relate to the value of the imported goods, as declared in the entry invoice, and Rainbow Rugs is statutorily required to maintain records on this information, Customs can summons these records under section 1509 to ascertain the correctness of Rainbow Rugs' original declaration of value. Although the government concentrates its arguments on the nebulous "pertains to any such importation," clause, the information it seeks is available under the more concrete portion of section 1508 that deals with the category of records an importer is required to maintain in support of the information provided in the entry documents. At the very least, this additional language in the recordkeeping statute supports a broader reading of the "pertains to any such importation" clause.

■ In summary, to obtain enforcement of the summons, the government has the burden of showing that the documents it has requested (1) pertain to a particular importation and (2) are normally kept in the ordinary course of business. With respect to the first element, the government has satisfied its burden given that it has specifically shown that the requested documents relate to the deductive valuation of the imported merchandise, and therefore "pertain" to the importation of those goods as that word is used in the statute. *See generally* Bottari Declaration. Moreover, as discussed previously, under the full text of section 1508, Customs has the authority to summons those documents that "pertain" to the valuation information contained in Rainbow Rugs' entry documents in order to substantiate that information.

■ With respect to the second statutory factor, Rainbow Rugs disputes whether the requested documents were actually kept in the ordinary course of business. *See* Supplemental Memorandum of Respondent in Opposition to Petition to Enforce United States Customs Service Summons at 2 (Docket No. 12). At the earlier hearing, Rainbow Rugs claimed that some of the records were not maintained in the form that Customs has requested. Under the statute, the government has the burden of showing that the requested documents are "normally kept in the ordinary course of business." *Rubin,* 2 F.3d at 977. However, to satisfy its burden in this regard the government need only show that the records are of a type "normally" kept in the ordinary course of business,

not that the records were "actually" kept by Rainbow Rugs. After reviewing the affidavits and declarations filed by the government, I conclude that the government has satisfied its burden with respect to the second statutory factor. The declaration of auditor Bottari outlines the various types of documents that the government has requested. *See* Bottari Declaration at ¶ 5. Based on his descriptions, the requested documents all appear to be of a general type that any importing company would normally keep in the ordinary course of doing business. *See id.*

Because the government has *prima facie* demonstrated that the requested records "pertain" to the importation of the rugs under investigation and "are normally kept in the ordinary course of business," the burden shifts to Rainbow Rugs to show that the requested documents do not satisfy the statutory criteria. *See United States v. Wilson,* 864 F.2d 1219, 1222 (5th Cir.), *cert. denied,* 492 U.S. 918, 109 S.Ct. 3243, 106 L.Ed.2d 590 (1989) (once government has met its burden with respect to enforcement of customs summons, burden shifts to the respondent to challenge the summons on any appropriate ground).

## SCOPE OF THE HEARING

■ Rainbow Rugs alleges that there is an issue as to the legitimacy of the government's investigation into its importation of the Lauralle and Farsi-style rugs. Specifically, it claims that the investigation and resulting summons are the result of erroneous information provided to Customs by a disgruntled former executive. Consequently, Rainbow Rugs contends that it may inquire into the bases for the government's investigation at the upcoming hearing in order to challenge the enforcement of the summons.

Under 19 U.S.C. § 1510, a hearing is required before the court may issue an order requiring compliance with a Customs summons. The procedure and scope of such a hearing, however, are not set forth in the statute. Although enforcement proceedings for administrative subpoenas are generally summary in nature, the scope and procedures for an enforcement hearing are matters committed to the sound discretion of the court. *See* Fed.R.Civ.P. 81(a)(3) advisory committee's notes.

■ A respondent is entitled to a limited evidentiary hearing to challenge the enforcement of an administrative summons on the grounds of improper purpose if it has made a preliminary showing of bad faith or improper motive on the part of the government. *See United States v. Samuels, Kramer & Co.,* 712 F.2d 1342, 1346–47 (9th Cir.1983); *Lynn v. Biderman,* 536 F.2d 820, 825–26 (9th Cir.), *cert. denied,* 429 U.S. 920, 97 S.Ct. 316, 50 L.Ed.2d 287 (1976). That is, the respondent must offer some evidence demonstrating specific facts that support the allegation of an improper purpose for the issuance of the summons before it is entitled to an evidentiary hearing on that issue. *See Samuels, Kramer & Co.,* 712 F.2d at 1347–48; *United States v. Salter,* 432 F.2d 697, 700 (1st Cir. 1970).

Here, Rainbow Rugs has offered no evidence of an improper motive or bad faith on the part of the government in seeking the enforcement of the administrative summons. Rainbow Rugs has merely questioned the propriety of the informer's motives, not the government's. The motives of the informer, however, are wholly irrelevant to the question whether the government's summons was obtained for a legitimate purpose. Indeed, as the government argues, there is nothing improper in commencing an investigation of Rainbow Rugs based on an informer's tip since Customs has an obligation to investigate allegations of wrongdoing. *See In re Clubman,* 532 F.Supp. at 95. Thus, because the motives of the government in commencing this investigation or in seeking the summons are not at issue, Rainbow Rugs is not entitled to question the legitimacy of Customs' investigation at the upcoming hearing in order to challenge the enforcement of the summons.

Therefore, notwithstanding my earlier intimations that Rainbow Rugs should be permitted to examine the three requested individuals from Customs, I now conclude that an examination of these individuals as part of an inquiry into the legitimacy of the govern-

ment's investigation is unwarranted. Likewise, because the process of the investigation is not at issue, testimony at the upcoming hearing on the hierarchical structure of Customs' investigation teams is also unnecessary. As discussed previously, however, Rainbow Rugs is entitled to challenge the enforcement of the summons at the upcoming hearing on the grounds that it fails to comply with the statutory criteria or is otherwise invalid.

### ORDER

For the foregoing reasons, the following procedures will apply at the hearing scheduled for this matter on October 18, 1993:

(1) Rainbow Rugs has the burden of demonstrating that the requested documents do not satisfy the applicable statutory criteria for production.

(2) The scope of the hearing shall be limited to an inquiry into the validity of the summons.

To the extent that respondent Rainbow Rugs still wishes to examine the requested individuals from Customs on the limited issues to be addressed at the upcoming hearing, it shall notify Customs of its intentions upon receipt of this order so that Customs will understand that it should be prepared to produce those individuals.