**Reversed and Rendered and Memorandum Opinion filed February 5, 2026.**



In The

# Fifteenth Court of Appeals

## NO. 15-25-00010-CV

**TEXAS HEALTH AND HUMAN SERVICES COMMISSION, Appellant**

**V.**

**SHANRESSA CRADDOCK, Appellee**

**On Appeal from the 250th District Court**
**Travis County, Texas**
**Trial Court Cause No. D-1-GN-22-007315**

## MEMORANDUM OPINION

A fraudster made a $930 purchase at a Sam's Club using SNAP benefits belonging to Shanressa Craddock. Craddock acknowledged that the unauthorized transaction occurred not through any fault of the Texas Health and Human Services Commission (HHSC), but because she was scammed into disclosing to an unknown third party the card and PIN numbers linked to her benefits. After HHSC denied Craddock's request to replace the benefits, she filed a suit for judicial review in district court, which reversed HHSC's decision and ordered it to restore

the benefits. HHSC now appeals, arguing that its decision is supported by substantial evidence and consistent with state and federal law. We agree and reverse and render judgment affirming its decision.

## BACKGROUND

The federally funded, state administered Supplemental Nutrition Assistance Program (SNAP) provides food assistance benefits to low-income households.[1] In Texas, SNAP is administered by HHSC.[2] HHSC distributes SNAP benefits to eligible households through an Electronic Benefit Transfer (EBT) system—an electronic system in which benefits are "issued to a client via a debit card" called the Lone Star Card.[3] To access the benefits, the "Lone Star Card is swiped at a retailer location for payment in the same way that a commercial debit card … is swiped."[4] To complete the transaction, the cardholder must enter a personal identification number (PIN), which "protects the card from use by unauthorized people."[5] The amount of the transaction is then deducted from the Lone Star Card account.[6]

Shanressa Craddock receives SNAP benefits. On August 19, 2022, she got the following text message from a number affiliated with "@yourtexasbenefits.com":

---

[1]  *See* 7 U.S.C. §§ 2011, 2013, 2020.

[2]  TEX. HUM. RES. CODE §§ 33.0006, 33.002(a).

[3]  1 TEX. ADMIN. CODE §§ 372.1510, 372.1511(b), 372.1701(8), (11).

[4]  TEX. HEALTH & HUM. SVCS., ELECTRONIC BENEFIT TRANSFER PROGRAM, https://www.hhs.texas.gov/business/electronic-benefit-transfer-program.

[5]  *Id.*; *see* 1 TEX. ADMIN. CODE § 372.1501(9) ("The PIN is used to verify the identity of a cardholder").

[6]  TEX. HEALTH & HUM. SVCS., LONE STAR CARD, https://www.hhs.texas.gov /services/financial/lone-star-card.

(Contact 1-888-920-0797) #Lone
Star Blocked.
#MSG ID 047499921

Craddock thought the text was from HHSC, and so she called the number. An automated message prompted her to enter her Lone Star Card number and PIN number, which she did. The next day, someone used the card and PIN numbers matching Craddock's Lone Star Card to make a $930 purchase at a Sam's Club.[7] When Craddock went to buy groceries the following day, she discovered that her Lone Star Card had a balance of only $0.54. Craddock contacted HHSC and was told the text message was a scam. Her card was "statused" as stolen as of August, 21, 2022, the day after the unauthorized transaction.

Craddock requested to have her stolen SNAP benefits replaced. HHSC EBT Operations investigated but, having found no "system error," denied Craddock's request by letter dated September 7, 2022.

Craddock appealed the denial by requesting a fair hearing.[8] At the hearing, Sandra Sosa with EBT Operations testified that they "performed an administrative review of Ms. Craddock's account to determine whether the State was at fault for the reported unauthorized transaction[]." Sosa explained that in conducting the review, EBT Operations applied Texas Works Handbook Policy B-341 and Texas Administrative Code Rule 372.1521, which defines a "system error." EBT Operations ultimately denied Craddock's request to replace the benefits because it "found no system error and no error on the part of State personnel or the State's

---

[7]     As Craddock concedes, this likely occurred through the use of a "cloned card," or at least "stolen data."

[8]     *See* 1 TEX. ADMIN. CODE § 357.3 (right to fair hearing regarding certain SNAP-related actions); *see also* 7 C.F.R. § 273.15(a) ("Except as provided in § 271.7(f), each State agency shall provide a fair hearing to any household aggrieved by any action of the State agency which affects the participation of the household in the [SNAP].").

vendor."[9]

Craddock testified that she called the phone number in the text message and entered her card and PIN numbers, that the message was fraudulent, that she was scammed, and that HHSC was not at fault. But she asked to have her benefits replaced because they belonged to her and she thought the situation was unfair.[10]

By order dated October 13, 2022, the hearings officer sustained HHSC's decision to deny Craddock's request to replace the stolen benefits. He found that the unauthorized transaction occurred the day before Craddock reported her card stolen, that there was no card or PIN number error, and that neither HHSC nor one of its contractors committed an unlawful or erroneous act. He made the following conclusion of law:

> **Texas Works Handbook, Section B-341**, stipulates the Agency replaces benefits issued via EBT when lost through unauthorized use of the account, only if the loss occurred after the individual reports the Lone Star Card lost or stolen, there has been a EBT card/PIN issuances error, or when there is unlawful or other erroneous action on the part of HHSC or HHSC personnel. In this case, the unauthorized transaction occurred prior to the report, by the Appellant, of a stolen card. In addition, there were no Agency EBT card or PIN issuance errors, and there were no erroneous actions made by the Agency. Therefore, based upon a preponderance of the evidence and testimony presented, the Agency action to deny replacement of the Appellant's stolen SNAP benefits is **SUSTAINED**.

Craddock requested an administrative review of the fair hearing decision.[11] An administrative law judge reviewed the record and authorities and upheld the

---

[9]     A different HHSC witness confirmed that the phone number in the text message that Craddock received is not one of HHSC's numbers.

[10]     Craddock also testified that she filed a police report, contacted USDA.gov, and contacted the Sam's Club where the unauthorized transaction occurred about obtaining video footage. She further testified that she had heard from others that the same person who had sent her the fraudulent text message was responsible for other SNAP-related scams.

[11]     *See* TEX. GOV'T CODE § 545.0153 (formerly TEX. GOV'T CODE § 531.019(c)).

hearing officer's decision.

Craddock then filed a suit for judicial review in Travis County District Court.[12] The suit was "governed by Subchapters G and H, Chapter 2001" of the Government Code and reviewed "under the substantial evidence rule."[13] After briefing and arguments, the district court signed a final order concluding "that substantial evidence does not support [HHSC's] decision to deny replacement SNAP benefits to [Craddock] under the facts of this case; and that [HHSC's] decision to deny replacement benefits to [Craddock] is contrary to law." The district court further concluded that HHSC's "policy in Texas Works Handbook § B-341 is outdated, unworkable, and in conflict with the law. *See* 7 U.S.C. § 2020(e)(11); 7 C.F.R. § 273.17(a)(1); 7 U.S.C. § 2016(e); 7 C.F.R. § 276.2(b)(7); 7 C.F.R. § 277.18(m)(1); and 1 Tex. Admin. Code § 372.1519); *Skipper v. Duffy*, 703 F. Supp. 697 (ND Ill 1988)." The district court ordered HHSC to restore Craddock's SNAP benefits in the amount of $930.

## DISCUSSION

HHSC argues that substantial evidence supports its decision to deny Craddock's request to replace the SNAP benefits because the decision comports with section B-341 of its Texas Works Handbook and does not conflict with any of the federal authorities listed by the district court in its final order. Craddock responds that HHSC's decision is not supported by substantial evidence because section B-341 conflicts with the law, a "system error" must have occurred, and the decision otherwise conflicts with several federal authorities, as the district court concluded. We agree with HHSC.

Like the district court, our review is governed by the substantial evidence

---

[12]     *See id.* § 545.0154 (formerly TEX. GOV'T CODE § 531.019(d)–(i)).

[13]     *Id.* § 545.0154(a)(1), (e)(2).

standard. As relevant here, reversal is required when the agency violates a statutory provision or commits an "error of law," or when its decision is not "reasonably supported by substantial evidence."[14] We consider "whether the evidence as a whole is such that reasonable minds could have reached the conclusion that the agency must have reached in order to justify its action."[15] The issue "is not whether the agency's decision was correct, but only whether the record demonstrates some reasonable basis for the agency's action."[16] At the administrative level, HHSC bore the burden of proof to support its decision by a preponderance of the evidence.[17]

## I. Substantial Evidence Supports HHSC'S Decision

HHSC evaluated Craddock's request to replace the stolen benefits under section B-341 of its Texas Works Handbook, a collection of policies that "informs [HHSC's] agents as to how to address requests for reimbursement." The version in effect then stated as follows,

> HSSC replaces benefits issued via EBT when lost through unauthorized use of the account only if the loss occurred:
>
> * after the individual reports the Lone Star Card lost or stolen;
> * because of a local eligibility determination office card/PIN issuance error; or
> * because of an unlawful or other erroneous action on the part of HHSC or an HHSC contractor.
>
> Do not replace benefits withdrawn from an account before the individual reports the Lone Star Card lost or stolen.

HHSC also considered Texas Administrative Code Rule 372.1521, which defines "system error" to mean "an error resulting from a malfunction at any point

---

[14]    *Id.* § 2001.174(2)(A), (D), (E).

[15]    *Tex. Alcoholic Beverage Comm'n v. Sierra*, 784 S.W.2d 359, 360 (Tex. 1990).

[16]    *Mireles v. Tex. Dep't of Pub. Safety*, 9 S.W.3d 128, 131 (Tex. 1999).

[17]    *See* 1 TEX. ADMIN. CODE § 357.9.

in the redemption process: from the system host computer, to the switch, to the third-party processors, to a store's host computer or point-of-sale terminal."[18]

Substantial evidence supports HHSC's denial decision. There was no dispute that the $930 charge occurred the day *before* Craddock reported that she had disclosed her card and PIN numbers to an unknown third party, upon which HHSC changed her Lone Star Card's status to "stolen." HHSC also submitted evidence that a Lone Star Card and valid PIN number matching Craddock's card and PIN numbers were used to make the unauthorized transaction, that the unauthorized transaction therefore did not result from a "system error," and that neither HHSC nor a contractor committed any other error. Each of the three section B-341 prongs address different ways in which HHCSC could be at fault for an unauthorized transaction, and Craddock acknowledged that HHSC was not at fault. This evidence demonstrates a reasonable basis upon which HHSC could have denied Craddock's replacement request.[19]

Craddock argues that HHSC improperly relied on section B-341 because it applies only when the *physical* Lone Star Card is reported lost or stolen, and HHSC "admitted the card was never stolen yet denied the claim." Craddock claims that HHSC therefore applied section B-341 "mechanically, without regard for Ms. Craddock's specific facts or the regulatory requirements." This is incorrect.

There is nothing in the administrative record to support that HHSC denied Craddock's replacement request because her physical Lone Star Card was not lost or stolen. Rather, HSSC construed the policy to apply when, as here, a card and

---

[18]     1 TEX. ADMIN. CODE § 372.1521.

[19]     Craddock complains that HHSC "ignored uncontroverted evidence" that she never lost her actual Lone Star Card or gave it to someone else, reported the theft promptly, and was at work when the unauthorized transaction occurred." But this disregards the standard of review, as well as the evidence we have detailed above and her own testimony that she was scammed into turning over her card and PIN numbers to an unknown third party.

PIN number have been *compromised*. HSSC then denied the replacement request in part because the unauthorized transaction occurred *before*, not *after*, Craddock made her report to HSSC. Craddock correctly asserts that an "agency cannot rely on internal manuals or guidance when they contradict binding statutes or administrative code provisions,"[20] but HHSC's interpretation and application of section B-341 does not contradict state law. Under the Administrative Code, HHSC "replaces benefits removed without authorization *after* the household … reports a lost or stolen EBT card *or compromised personal identification number*."[21] Because Craddock's SNAP benefits were removed without authorization before she notified HHSC that her PIN number had been compromised, HHSC denied her replacement request consistent with controlling law.

Craddock also argues that HHSC failed to comply with its obligation under § 372.1521 of the Administrative Code to determine whether there was a "system error" because instead of evaluating for potential error the "multiple points of system operation" listed in § 372.1521(a),[22] EBT Operations only confirmed that a matching card and PIN number were used to make the unauthorized transaction. Craddock contends that there must have been a "system error" because "$930 in SNAP benefits were issued through HHSC's system without the physical presentation of the recipient's actual Lone Star Card."

But § 372.1521 only *defines* what constitutes a "system error"—an error

---

[20]     *See HHSC v. Estate of Burt*, 689 S.W.3d 274, 285 (Tex. 2024) ("Written employee guidance cannot be used to contravene a statute."); *United States v. Ford Motor Co.*, 516 F.Supp.2d 770, 780 (W.D. Tex. 2007) ("[A]n agency's internal guidelines and manuals do not have the equivalent force of law as a federal statute or regulation.").

[21]     1 TEX. ADMIN. CODE § 372.1519(a). Section 372.1519 is not limited to "card replacement," as Craddock suggests. It expressly covers "Replacing … Stolen Benefits." *See id.*

[22]     The "system host computer," "switch," "third-party processors," and "store's host computer or point-of-sale terminal." 1 TEX. ADMIN. CODE § 372.1521(a).

"resulting from a malfunction at any point in the redemption process."[23] It contains no language detailing *how* HHSC must go about determining whether a system error occurred. In that vein, a reasonable person could have concluded that EBT Operations determined that the unauthorized EBT transaction occurred not because of any error in the redemption process, but because Craddock was scammed into giving her card and PIN numbers to an unknown third party, who then illegally used them to make the purchase at Sam's Club. The same conclusion could have been drawn based on the September 7, 2022 letter EBT Operations sent to Craddock notifying her that it "didn't find a system error," and based on Sosa's testimony stating the same at the fair hearing.

At bottom, Craddock's real complaint is that the EBT system is not sophisticated enough to detect the difference between someone who uses a physical Lone Star Card issued to a SNAP household and someone who uses a cloned card to illegally use a SNAP household's valid card and PIN numbers. She even acknowledges this in her brief: "The Agency's system and Handbook seem unable to address computer scams arising from information security gaps." This Court is in no position to remedy that issue.

But Congress is, and it has taken steps to protect SNAP households victimized by fraud. As part of the Consolidated Appropriations Act of 2023, Congress authorized state agencies to replace SNAP benefits that were "stolen through card skimming, card cloning, or similar fraudulent methods," but only for benefits that were stolen "beginning on October 1, 2022."[24] Unfortunately for Craddock, her SNAP benefits were stolen on August 20, 2022, so she was not eligible for replacement benefits under the revised federal law.

We sustain HHSC's issue arguing that substantial evidence supports its

---

[23]     *Id.*

[24]     *See* Pub. L. No. 117-328, 136 Stat. 5986–87 (Dec. 29, 2022).

denial decision.

## II. No Conflict with Federal Law

HHSC also challenges the district court's conclusion that its decision conflicts with federal authorities. As the Texas agency responsible for administering SNAP, HSSC must comply with federal SNAP statutes and regulations.[25]

The first federal provision cited by the district court requires a participating State's plan of operation to provide "for the prompt restoration in the form of benefits to a household of any *allotment* … which has been wrongfully denied or terminated."[26] An "allotment" is a defined term that means "the total value of benefits a household is authorized to receive during each month."[27] Section 2020(e)(11) thus has no application here because Craddock did not seek replacement of benefits *not* allotted to her for a particular month; she sought replacement of benefits that *were* allotted to her but later stolen.[28]

The district court also cited 7 U.S.C. § 2016(e), which should be construed in light of the preceding provision, § 2016(d). Section 2016(d) requires the Secretary of Agriculture to "prescribe appropriate procedures for the delivery of benefits to benefit issuers and for the subsequent controls to be placed over such benefits by benefit issuers in order to ensure adequate accountability."[29] 7 U.S.C. § 2016(e) then says that "the State agency shall be strictly liable *to the Secretary*

---

[25]     *See* 7 U.S.C. § 2020(d), (e); *Pimentel v. Dreyfus*, 670 F.3d 1096, 1099 (9th Cir. 2012) ("participating states must … comply with applicable federal laws and regulations").

[26]     7 U.S.C. § 2020(e)(11) (emphasis added).

[27]     7 U.S.C. § 2012(b).

[28]     Craddock also cites 7 U.S.C. § 2020(b), but that provision requires a State agency to restore "improperly denied, terminated, or underissued benefits" only "to the extent required by subsection (e)(11)," which we have explained does not apply here.

[29]     7 U.S.C. § 2016(d).

for any financial losses involved in the acceptance, storage and issuance of benefits."[30] Section 2016(e) thus addresses (1) State agency liability to the Secretary for (2) losses resulting from the State's acceptance, storage, and issuance of benefits to SNAP households, not (1) a State agency's liability to a SNAP household for (2) a third party's fraudulent access and use of the household's benefits.

Likewise, 7 C.F.R. § 276.2(b)(7) addresses State agency liability to "FNS," the Food Nutrition Service of the U.S. Department of Agriculture, for "overissuances" resulting from EBT "system errors and unauthorized account activities."[31] Again, that addresses liability to FNS, not a SNAP household, and it is for an overissuance—i.e., from the agency to the household—not for stolen benefits.

The last two federal regulations cited are also inapplicable. 7 C.F.R. § 273.17(a)(1) requires a State agency to restore benefits that "were lost whenever the loss was caused by an error by the State agency." As already explained, substantial evidence (including Craddock's own admission) supports HHSC's determination that it did not commit any error. And 7 C.F.R. § 277.18(m)(1) simply says that State agencies are responsible for the security of the Information System that they are required to install and implement for the administration of SNAP. The breach here occurred not because the agency's information system was hacked, but because Craddock was tricked into giving away access to it.

Lastly, *Skipper v. Duffy* has no application here, nor does Craddock defend its citation by the district court.[32] The case involved a summary judgment regarding replacing denied food stamps and whether two Illinois Department of

---

[30]    7 U.S.C. § 2016(e) (emphasis added).

[31]    7 C.F.R. § 276.2(b)(7).

[32]    703 F.Supp. 697 (N.D. Ill. 1988).

Public Aid rules could apply to "non-mail issuance systems."[33]

We sustain HHSC's issue that the district court erred by concluding that HHSC's denial decision conflicted with federal law.

## CONCLUSION

Having sustained HHSC's issues, we reverse the district court's final order and render judgment affirming HHSC's decision denying Craddock's request to replace SNAP benefits.

/s/ Scott A. Brister
Scott A. Brister
Chief Justice

Before Chief Justice Brister and Justices Field and Farris.

---

[33]     *Id.* at 698–99.